United States District Court
Southern District of Texas
**ENTERED**
January 31, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE FIRST BRANDS GROUP, LLC § § § | |
| EVOLUTION CREDIT PARTNERS, § § § Appellant, § v. § § FIRST BRANDS GROUP, LLC, *et al.*, § § Appellees. § | CIVIL ACTION NO. H-26-73 BANKRUPTCY CASE NO. 25-90399 |

**MEMORANDUM OPINION AND ORDER**

Evolution appeals a bankruptcy court order allowing First Brands to use up to $60 million in cash collateral in which Evolution claims a first-lien security interest.  This case is remanded to the bankruptcy court for further proceedings consistent with the following opinion, which rules: (1) under § 363, bankruptcy courts may inquire into the validity of an asserted property interest only to see if the creditor can establish a prima facie or colorable claim to that property interest; (2) the bankruptcy court did not rule that Evolution lacked a security interest in the $60 million cash collateral; (3) Evolution likely was not adequately protected when the bankruptcy court allowed First Brands to use the cash collateral; (4) new facts have created a genuine factual dispute material to determining whether Evolution is currently adequately protected; and (5) the parties may, on remand, litigate whether Evolution is currently adequately protected or, through appropriate procedures, whether it has a first-lien security interest.

I.      Background

First Brands Group, LLC is a supplier of aftermarket automotive parts, including brakes, filters, wipers, lights, pumps, and towing solutions. (Bankr. Docket Entry No. 22 ¶ 8). On September 24, 28, and 29, 2025, the various First Brands entities filed for bankruptcy. When they did so, First Brands reported approximately $11.5 billion in financing obligations but about $12 million in its corporate bank accounts. (*Id.* ¶¶ 34–35). About $2.3 billion of First Brands's liabilities relate to accounts receivable factoring. (*Id.*).

Accounts receivable factoring is a commonsense business arrangement. When First Brands sells parts to customers, those sales may include long-dated payment terms, allowing the customers to pay First Brands several months later. The generous terms may attract customers, but First Brands suffers a period without cash and without inventory of commensurate value. To maintain its cash flow, First Brands sells the rights to those receivables at a discount to a third party. First Brands receives immediate cash, and the third party receives the full value of the receivables when the customer pays. This dispute concerns First Brands sale of the right to the receivables to Evolution.

After the sale, First Brands declared bankruptcy. Evolution is concerned that it will not recover the full value of the receivables it believes it is entitled to. (Docket Entry No. 16 at 3–5). Evolution asserts a first-lien security interest on approximately $60.5 million worth of First Brands's receivables. (*Id.* at 3). First Brands argues that Evolution does not have a right to these receivables because of significant irregularities in First Brands's previous factoring practices. (Docket Entry No. 21 at 4–5). First Brands claims that its forensic expert "uncovered that the $60.5 million claim of unpaid factored receivables asserted by Evolution does not match to *any* valid invoices in First Brands' records." (*Id.* at 5).

2

This dispute arose when First Brands moved for permission to draw on funds from the Factored Receivables Account, the account in the bankruptcy estate that has collected the receivables recently paid back to First Brands. (Bankr. Docket Entry No. 807). The Factored Receivables Account had somewhere between $105.9 million and $109 million when the parties litigated the motion in the bankruptcy court. (*See* Docket Entry No. 16 at 10 (including a table depicting the categories of cash in the account)). First Brands asked the bankruptcy court's permission to spend $63 million representing certain categories of receivables in the Factored Receivables Account. (Bankr. Docket Entry No. 1046-1 at 3). Evolution objected, arguing that First Brands was going to use the cash to which it was entitled under its first-priority security interest; if First Brands burned through $63 million, then the Factored Receivables Account would not have enough funds that Evolution could claim priority to that would satisfy Evolution's interest. (Bankr. Docket Entry No. 1031).

The bankruptcy court ruled that First Brands could draw up to $60 million from the Factored Receivables Account. (Bankr. Docket Entry No. 1133). Although the bankruptcy court did not definitively rule on the validity or nature of Evolution's interest, (Docket Entry No. 17-4 at 588), and cautioned that its assessment was preliminary, it explained that it was not convinced that Evolution had priority over other creditors, (*id.* at 588–90). The bankruptcy court authorized the release of the funds because, whoever held the priority interest, that interest was adequately protected. (*Id.* at 591–92, 598, 658–59). If First Brands drew up to the amount permitted by the order, about $49 million would remain in the Factored Receivables Account.

Evolution appealed on the ground that the $49 million left in the Account would leave Evolution's lien underprotected by approximately $20 million. (Docket Entry No. 1; *see* Docket Entry No. 17-4 at 693 (explaining that Evolution cannot assert a right to all $49 million left in the

Account)). This court expedited the appeal because the record showed that First Brands is likely to burn through the collateral by early February. (Docket Entry No. 14). Evolution argues that the bankruptcy court erred in ruling that its interest was adequately protected; in its view, the $49 million does not adequately secure its right to $60.5 million. (Docket Entry No. 16 at 11–12). First Brands responds that the bankruptcy court did not err, for two reasons: (1) the Factored Receivables Account has, during the pendency of this appeal, collected enough receivables to adequately protect Evolution's interest; and (2) even if the bankruptcy court authorized First Brands to withdraw and spend an amount greater than Evolution's lien, the bankruptcy court appropriately did so after balancing how much cash remained in the account against the likelihood that Evolution could establish a first-priority security interest. (Docket Entry No. 21 at 11–12).

**II.     Analysis**

"Secured creditors are entitled to 'adequate protection' where the debtor retains use or possession of collateral during the pendency of a proceeding." *In re Triplett*, 87 B.R. 25, 26 (Bankr. W.D. Tex. 1988). Section 363 of the Bankruptcy Code prohibits debtors from using cash collateral without the consent of "each entity that has an interest in such cash collateral," unless the bankruptcy court, "after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) then mandates that the bankruptcy court "prohibit or condition such use . . . as is necessary to provide adequate protection." *Id.* § 363(e). "[R]estriction of the use of cash collateral should only occur where the facts show that failure to restrict use may 'impair' the creditor and deny the creditor adequate protection." *In re Triplett*, 87 B.R. at 27. "The protection afforded a creditor whose cash collateral is permitted by the court to be used by a debtor in possession is whatever condition is deemed

4

necessary to provide adequate protection of the creditor's interest." *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995).

The parties dispute: (1) whether Evolution has a secured interest in the cash collateral; and (2) whether Evolution is adequately protected in its alleged secured interest.

### A.   The Assessment of Property Interests

First Brands frames the issue on appeal as a review of the bankruptcy court's assessment of the likelihood that Evolution can establish its priority interest against the amount of collateral remaining. It frames the question as a holistic assessment of whether the expected value of Evolution's interest is adequately protected. Evolution raises two problems: whether the bankruptcy court erred in not holding an adversary proceeding; and whether the court failed to apply the correct standard for finding adequate protection.

Bankruptcy courts may conduct preliminary hearings on the use of cash collateral. After a preliminary hearing, "the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under" § 363(e). 11 U.S.C. § 363(c)(3). "Bankruptcy Rule 4001(b)(2) provides that a court may conduct a preliminary hearing on a motion for authorization to use cash collateral, 'but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.'" *In re Premier Ent. Biloxi LLC*, No. 06-50975 ERG, 2006 WL 2884541, at *2 (Bankr. S.D. Miss. Oct. 10, 2006) (quoting FED. R. BANKR. P. 4001(b)(2)). The bankruptcy court did not consider its ruling authorizing First Brands to use up to $60 million in funds to be an "interim" determination. (Bankr. Docket Entry No. 1133; Docket Entry No. 17-4 at 591 ("It's not interim, but just granting relief to allow the debtors to use the cash.")). Nor did the bankruptcy court make findings that allowing First Brands to use the funds was necessary to avoid immediate and

5

irreparable harm to the estate pending a final hearing. (*See* Bankr. Docket Entry No. 1133). The ruling allowing First Brands to spend up to $60 million in cash collateral was a final determination under § 363(e).

First Brands is correct that bankruptcy courts ruling under § 363(e) may conduct some examination of lien validity. Section 363(p) provides that "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2). Courts appear to resolve some disputes under § 363(e) on the ground that the entity asserting a property interest could not bear its burden of proving that interest. *See, e.g.*, *In re TM Vill., Ltd.*, No. 18-32770-BJH, 2019 WL 1004571, at *6 (Bankr. N.D. Tex. Feb. 28, 2019) (authorizing the sale of property without providing adequate protection because the parties asserting a property interest could not meet their burden of proof but declining to expunge their lis pendens without an adversary proceeding); *In re Aircomm Commc'ns, Inc.*, No. 10-80444-G3-11, 2010 WL 5014000, at *2 (Bankr. S.D. Tex. Dec. 2, 2010) ("Movant has not met its burden of proof to establish that any of Debtor's cash is its cash collateral."); *In re TWL Corp.*, No. 08-42773-BTR-11, 2008 WL 5246069, at *5 (Bankr. E.D. Tex. Dec. 15, 2008) ("Skill Ventures failed to sustain its burden of proof as required by Section 363(p)(2) as to the existence, validity priority, and extent of the interest entitled to such protection, and, accordingly, no adequate protection by the Debtors or the Buyer shall be required in order for the Sale to proceed free and clear of the Distribution Agreement.").

This is in tension with the Bankruptcy Rules and other case law, which suggest that, in the absence of an adversary proceeding, bankruptcy courts addressing requests for relief that raise questions about an asserted property interest should assess only whether the party asserting the

interest has made a prima facie showing of the validity and scope of that interest.[1] Consistent with this limited burden, courts may consider whether there is evidence that "clearly refutes a creditor's claim to the property." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir. 1994). But "the substantive consideration of such evidence should stop as soon as it appears that the" party asserting the property interest "has a 'colorable claim' to the property in question." *In re Montgomery*, 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001) (quoting *Grella*, 42 F.3d at 32); *see also In re Keen*, No. 13-71705, 2014 WL 6871867, at *6 (Bankr. W.D. Va. Dec. 3, 2014) ("Most courts require that, in the summary nature of stay proceedings, the movant show at least a 'colorable' claim to property of the estate." (quoting *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990)).

Permitting a broader or deeper inquiry into the validity of an asserted property interest at a preliminary hearing on the use of cash collateral would bypass Rule 7001(b)'s general requirement that parties must challenge lien validity through an adversary proceeding, not an adequate-protection hearing. *See* FED. R. BANKR. P. 7001(b). Weighing the likelihood of success on the merits of establishing a secured interest against the likelihood of success in showing that available

---

[1] First Brands relies heavily on *Collier on Bankruptcy* for the proposition that § 363(e)'s requirement "of adequate protection may have to be applied in a flexible manner to meet emergencies in which prompt authorization to use collateral, particularly cash collateral, is necessary," and "permit[s] some examination of lien validity." 3 Collier on Bankruptcy ₱ 363.05 (16th ed. 2026). But the cases *Collier* cites do not seem to permit the approach that First Brands asks the court to take, which is to bypass the adequate-protection analysis (or to permit some hybrid, expected-value analysis) based on tentative doubts about whether an asserted security interest could otherwise be shown prima facie to be valid, without adhering to the specific rules and procedures for preliminary determinations. *See, e.g.*, *In re Placid Oil Co.*, 102 B.R. 538, 542 (Bankr. N.D. Tex. 1988) (holding that the asserted liens were prima facie valid); *In re Collins*, 180 B.R. 447, 452 & n.8 (Bankr. E.D. Va. 1995) (addressing the debtor's motion for authority to sell property, but not addressing the issue of the validity or priority of the asserted lien on the property because that had to be addressed in an adversary proceeding); *In re K-Fabricators, Inc.*, 135 B.R. 654, 658 (Bankr. W.D. Wash. 1992) ("A sale pursuant to 11 U.S.C. § 363(f) does not establish the validity of a claimed lien, which requires an adversary proceeding."); *cf. In re Megan-Racine Assocs., Inc.*, 192 B.R. 321, 326 (Bankr. N.D.N.Y. 1995) (ruling that § 363(e) does not apply to contingent property interests); *In re Wright Grp., Inc.*, 443 B.R. 795, 806–07 (Bankr. N.D. Ind. 2011) (ruling that the parties implicitly waived their right to an adversary proceeding).

cash collateral would adequately protect that interest would also bypass § 363(c)(3)'s and Rule 4001(b)(2)'s rules and regulations for preliminary hearings on the use of cash collateral. Preliminary rulings, tied to the irreparable harm the estate might suffer, may allow for more of an assessment of an interest's validity, similar to the one First Brands thinks that the bankruptcy court employed here, until a full adversary proceeding and § 363(e) hearing can take place. The parties did not address this issue in the context of preliminary relief under § 363. Otherwise, the court is persuaded that, absent clear evidence or legal precedent that refutes the claimant's right to an asserted property interest, the claimant is entitled to adequate protection until an adversary proceeding determines the validity, extent, and priority of the asserted property interest.

The court offers this guidance because it may prove helpful on remand; the resolution of this legal question is ultimately unnecessary to determining this appeal. Although the bankruptcy court doubted that Evolution would ultimately prevail on the validity and scope of its asserted first-priority security interest, the record shows that the bankruptcy court reserved ruling on the issue. (Docket Entry No. 17-4 at 587–88). Instead, the court focused on whether Evolution—or any other creditor—would still be adequately protected. (*Id.*). This court will not affirm on the basis that Evolution lacks a property interest; the bankruptcy court assumed, without deciding, that it did and moved to determine adequate protection. The present record requires this court to take the same approach.

### B. Adequate Protection

The question squarely presented on appeal is whether Evolution's assumed interest in $60.5 million was adequately protected. The Debtors represent that the Factored Receivables Account now includes over $67 million, (Docket Entry No. 21 at 11 (Debtors' representation))—allegedly more than enough to adequately protect Evolution's asserted first-priority security interest. The

Debtors represent that the estate is owed about $230 million in outstanding prepetition receivables, "which, if and when received, would be transferred to the segregated account and held pending further order of the Bankruptcy Court." (*Id.* at 11). The Debtors also "agreed not to seek the release of any further funds from the Factored Receivables Account before February 19, 2026, which is the date of an evidentiary hearing on" a related "matter set by the Bankruptcy Court." (*Id.* at 10 (citing Bankr. Docket Entry No. 1681)). The Debtors argue that, under these conditions, Evolution's interest is adequately protected.

Evolution responds that this court should not consider facts outside the appellate record and that, even taking this additional information about forthcoming funds into account, Evolution would lack adequate protection because these receivables may match invoices owed to other entities and because vendors may have offsetting credits that make the collection of these receivables uncertain. (Docket Entry No. 22 at 5 n.4).

Evolution's arguments are persuasive, in part. The court must consider the updated facts and cannot confine itself to the appellate record. The parties disputed whether to expedite this appeal. First Brands resisted an expedited appeal in part because the record in the bankruptcy court was likely to continue to develop rapidly during the pendency of the appeal. Evolution assumed the risk of a developing record when it moved to expedite the appeal. (*See* Docket Entry No. 14 at 2 ("Developments in the bankruptcy court may moot the appeal or materially alter the record as the briefs are filed.")). But without a firmer determination on the validity of Evolution's asserted first-priority security interest—or at least adherence to the procedures for the preliminary use of cash collateral or a ruling that Evolution did not make a prima facie showing of its first-priority interest—Evolution is entitled to adequate protection.

At the time Evolution appealed, its interest was not adequately protected because the Factored Receivables Account did not include enough to cover Evolution's $60.5 million interest. The bankruptcy court thought there was an equivalent amount—around $56 to 59 million, (Docket Entry No. 17-4 at 592)—but that was likely a miscalculation, (Docket Entry No. 16 at 9–13, 20–21 (explaining the miscalculation)).[2] The Factored Receivables Account did not have enough cash to completely compensate Evolution. *In re Cage*, 357 B.R. 99, 101 (Bankr. S.D. Tex. 2004) (quoting *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2nd Cir. 1935)). But additional receivables have since come into the Factored Receivables Account, which may afford Evolution adequate protection. There are genuine factual disputes material to determining whether Evolution has adequate protection. This court is not in a position to resolve them. Nor is this court in the position to make the first ruling on the validity of Evolution's asserted security interest, which it would do without the aid of either an evidentiary or adversary proceeding.

## III.   Conclusion

For these reasons, the appeal is remanded to the bankruptcy court for additional proceedings consistent with this opinion. The parties may litigate, through appropriate procedures,

---

[2] At the hearing held by this court, First Brands stated that the bankruptcy court's adequate-protection finding was supported by the court's consideration of the amount of receivables that was expected to continue to flow into the estate. But the bankruptcy court's ruling appears closely tied to the amount of cash already in the Factored Receivables Account. (Docket Entry No. 17-4 at 591–92). It is unclear how much evidence the bankruptcy court had before it on the projected incoming receivables. The bankruptcy court made a passing reference, in its discussion of adequate protection, to the fact that the dollar amounts would change and that the adequate-protection analysis would have to change with them. (Docket Entry No. 17-6 at 1037). But it is not clear what evidence allowed the bankruptcy court to find that the incoming receivables would change the numbers in the Factored Receivables Account to give Evolution adequate protection. *See Endrex Expl. Co. v. Pampell*, 97 B.R. 316, 321 (N.D. Tex. 1989) ("Notwithstanding the considerable deference due the bankruptcy court's fact-finding function, the bankruptcy judge is required to make findings of fact that are sufficiently comprehensive to enable appellate review."). Evolution asserted at oral argument that it had a superior security interest only in the funds already in the estate and would not have the same priority position on new, incoming receivables. The parties' briefs do not squarely address that distinction, and the record in the bankruptcy court does not offer sufficient additional insight. As stated above the line, there are too many open factual issues that this court is not in a position to resolve.

whether Evolution has a first-priority security interest. They may also litigate whether Evolution is adequately protected by the receivables that may flow into the estate in the coming weeks or months. In determining whether Evolution is adequately protected, the bankruptcy court may consider, consistent with the applicable law and in addition to other relevant facts, the amount of funds remaining in the segregated account, the likelihood that additional funds may enter the account, as well as other potential sources of recovery for Evolution. If the bankruptcy court finds that Evolution is adequately protected, it must state specifically what funds or other property, whether currently in the estate or projected to be in the estate (and on what basis), adequately protect Evolution.

The bankruptcy court may grant the release of additional funds in a manner consistent with this opinion, or with the agreement of the directly affected parties. This court retains jurisdiction over the appeal if the bankruptcy court rules on the adequate-protection issue.

The court recognizes that this resolution does not offer either party a final resolution on an important issue in this difficult reorganization. But the record is too infirm to support a more definitive ruling. The validity of Evolution's security interest is not before this court, and the factual determination of adequate protection is still in dispute based on developing facts, a risk taken when Evolution moved to expedite the appeal. The court thanks the parties' counsel and the bankruptcy court for their quick, thorough, and excellent work.

**REMANDED**.

SIGNED on January 31, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge